UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARCO SANTIAGO,

Plaintiff,

v.

BARRY WILKINSON, et al.,

Defendant.

CASE NO. 3:20-CV-5538-RSL-DWC

REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR
SUMMARY JUDGMENT

Noting Date: July 9, 2021

The District Court referred this matter, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Presently before the Court are Plaintiff's Motion for Summary Judgment (Dkt. 19) and Defendants' Cross Motion for Summary Judgment (Dkt. 29)[1].

BACKGROUND

Plaintiff[2] is a current Washington State prisoner housed at the Stafford Creek Corrections Center (SCCC). Dkt. 5.

---

[1] These motions were re-noted for consideration together on April 9, 2021. Dkt. 62.

[2] Plaintiff is transgender and uses she/her pronouns. *See* Dkt. 5 at 1.

1    On December 16, 2019, SCCC mailroom staff member T. Matsen (Matsen), reviewed an

2    incoming book titled "How to Train Your Devil", intended for Plaintiff. Dkt. 32 at 2. Based on

3    the sexually explicit content of the book Matsen issued Rejection Notice 23568. Dkt. 31 at 4-5.

4    Mailroom Sergeant Wilkinson (Wilkinson) then reviewed the book and rejection notice,

5    and agreed with Matsen's assessment. Dkt. 32 at 2. The notice indicated that the book was

6    rejected for reason 16, "Incoming book that has nudity, bare breasts, and pictures that appear to

7    depict a penis and oral stimulation of said depicted penis pictures. This is considered sexually

8    explicit per Wash. Admin. Code § 137-48-020 and [Department of Corrections] DOC Policy

9    450.100." Dkt. 31 at 4-5.

10    Plaintiff appealed Wilkinson's determination. Dkt. 31-1 at 46-63.

11    Wilkinson then sent the book to the Publication Review Committee (the Committee) at

12    Headquarters. Dkt. 31 at 5. The Committee concurred that the book was sexually explicit, noting

13    that it included "nudity, exposed buttocks, groping breasts, a nude female with her legs spread

14    receiving oral sex, [and] a female performing what appears to be fellatio on a penis-shaped

15    object with the words "lick", "kiss", "shlllp" also in the image." *Id*. The Committee issued its

16    decision on January 13, 2020. *Id*.

17    Plaintiff then appealed the Committee's decision and the book was sent to Corrections

18    Manager Tracy Schneider (Schneider) for final review. *Id*. On April 13, 2020, Schneider issued a

19    letter to Plaintiff notifying Plaintiff of a backlog in mail rejection appeals. *Id*. Upon Schneider's

20    review of the relevant pages of the book, she noted the following:

21    • The back cover of the book reads, "The last thing Zeno expected when she set
      off to slay the Devil King was that she'd become his mother. But it was either that

22    or kill a one-year old baby. And Zeno is no baby-killer – even if that baby is a
      pervert with a very lusty adult's mind."

23    • Multiple instances of bare breasts and nipples, and naked women.

24

REPORT AND RECOMMENDATION ON CROSS
MOTIONS FOR SUMMARY JUDGMENT - 2

• A naked woman with her legs spread and detail of her genitalia.

• Groping naked breasts.

• A woman performing fellatio on an anthropomorphized penis-shaped plant with the words "stroke," "kiss," "shake," "lick," and "schlllp." After performing fellatio on it, she puts it between her bare breasts and the dialogue reads, "Good boy," "Does that feel good?" and "Want me to do it again?"

• A woman abducting the alien creature and the dialogue reads, "Hold him Down, Love Lesia. We're going to have some fun." The next scene involves the woman, naked, with her legs spread appearing to receive oral sex from the creature. The dialogue reads "Just lie back and enjoy the ride."

• The alien creature restrained on a table while a naked woman stands over it.

• Two naked [women] standing next to each other. Dialogue reads, "Didn't he strip off your clothes?!," "I stripped myself, thank you very much!!" and "Sh…she's a pervert!!"

• A scene titled "All Sex Education" with the alien creature and a naked woman. The dialogue reads "Here's how you take off a woman's clothes." and "Listen up, this is how babies are made!"

• The alien creature comparing two naked women. Dialogue reads "Her breasts are three millimeters higher than before…" and "And her hips are two millimeters wider too!!"

*Id*. at 5-6.

Accordingly, Schneider concurred with the Committee's decision and found the book to contain clearly sexually explicit content that met the definition of Wash. Admin. Code § 137-48-020(13) and DOC Policy 450.100. *Id*. at 6.

On June 25, 2020, Plaintiff filed a complaint in this Court seeking injunctive relief and $25,000 in damages from SCCC staff for the above decisions. Dkt. 5.

On September 21, 2020, Plaintiff filed a Motion for Summary Judgment. Dkt. 19. On October 16, 2020, Defendants filed a Response/Cross-Motion for Summary Judgment. Dkt. 29.

REPORT AND RECOMMENDATION ON CROSS
MOTIONS FOR SUMMARY JUDGMENT - 3

On October 28, 2020, Plaintiff filed a Response. Dkt. 35. On November 5, 2020, Defendants filed a Reply. Dkt. 37.

On March 11, 2021, this Court entered an order indicating that "upon consideration of the Cross-Motions, the Court will only consider the Complaint, the Cross-Motions, the parties' original Responses and Replies, and the Plaintiff's supplemental response and Defendants' supplemental reply. The Court will not consider any pleadings or briefs not directly related to the Cross-Motions." Dkt. 61.

On March 22, 2021, Plaintiff filed a Supplemental Response. Dkt. 63. Defendants did not file a supplemental reply.

<u>STANDARDS</u>

I.    <u>Summary Judgment</u>

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.

1    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec.*

2    *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

3    "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence,

4    is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc*.

5    104 F.3d 1168, 1171 (9th Cir. 1997); *Villiarimo v. Aloha Island Air Inc*., 281 F.3d 1054, 1061

6    (9th Cir. 2002) (holding that district court can disregard self-serving declaration that states only

7    conclusions and not facts that would be admissible in evidence). In other words, the purpose of

8    summary judgment "is not to replace conclusory allegations of the complaint or answer with

9    conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

10   II.    42 U.S.C. § 1983

11   To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a

12   violation of rights protected by the Constitution or created by federal statute, and (2) the

13   violation was proximately caused by a person acting under color of state law. *Leer v. Murphy*,

14   844 F.2d 628, 632 (9th Cir. 1988). Thus, the first step in a § 1983 claim is to identify the specific

15   constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). A plaintiff

16   must then allege facts showing how individually named defendants caused, or personally

17   participated in causing, the harm alleged in the complaint. *Leer,* 844 F.2d at 633.

18                                    DISCUSSION

19   Plaintiff, proceeding with this action pro se and in forma pauperis, seeks summary

20   judgment in her favor finding her First and Fourteenth Amendment rights were violated when

21   Defendants intercepted, and ultimately refused to permit her to have the book "How to Train

22   Your Devil". Dkt. 5; Dkt. 19.

23

24

1    Defendants diametrically oppose Plaintiff's motion, seeking summary judgment in their

2    favor on the basis that no material question of fact exists that Plaintiff cannot prove any

3    constitutional violations involving the prohibited book. Dkt. 29 at 1.

4    **I.    First Amendment Claim**

5    Inmates have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52

6    F.3d 264, 265 (9th Cir. 1995) (per curium). However, an inmate's First Amendment rights are

7    "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve

8    legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196,

9    197 (9th Cir. 1987). "When a prison regulation impinges on inmates' constitutional rights … the

10    regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*,

11    482 U.S. 78, 89 (1987); *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989).

12    In determining whether a prison regulation regarding incoming mail is reasonably related

13    to a legitimate penological interest, the court considers the following factors: (a) whether there is

14    a valid, rational connection between the regulation and the interest used to justify the regulation;

15    (b) whether prisoners retain alternative means of exercising the right at issue; (c) the impact the

16    requested accommodation will have on inmates, prison staff, and prison resources generally; and

17    (d) whether the prisoner has identified easy alternatives to the regulation which could be

18    implemented at a minimal cost to legitimate penological interests. *Turner*, 482 U.S. at 89-91;

19    *Thornburgh*, 490 U.S. at 413-14.

20    a.  Rational Connection Between the Regulation and the Interest Justifying It

21    The first question is whether there is a rational relationship between a legitimate

22    penological interest and the regulation at issue. Turning first to the regulation at issue, DOC

23    Policy 450.100 states, "Publications with content that violates any Department policy or facility

24

1    specific procedure will be referred to the Publication Review Committee for further review and a

2    final decision." Dkt. 29 at 11. In this case, the book "How to Train Your Devil" was found to

3    contain content that violates every subsection of Wash. Admin. Code § 137-48-020(13), which

4    defines sexually explicit materials in the context of inmate mail as follows:

5    (13) "Sexually explicit materials" consist of any item reasonably deemed to be
     intended for sexual gratification and which displays, portrays, depicts, or
6    describes:

7    (a) Nudity, which includes, but is not limited to, exposed/visible (in whole or
     part, including under or through translucent/thin materials providing intimate
8    physical detail) genitals/genitalia, anus, buttocks and/or female/transgender
     breast nipple(s);
9

10   (b) A sex act which includes, but is not limited to, genital-genital, oral-genital,
     anal-genital, or oral-anal contact/penetration, genital or anal
11   contact/penetration with an inanimate object, masturbation, and/or bodily
     excretory behavior;

12   (c) Sadistic/masochistic abuse, bondage, bestiality, and/or participant who
     appears to be nonconsenting, dominated, degraded, humiliated, or in a
13   submissive role, and/or a participant who appears to be acting in a forceful,
     threatening, dominating, or violent manner; and/or
14
     (d) A minor, or a model or cartoon depicting minors, in a sexually suggestive
15   setting/pose/attire.

16   According to Defendants, the legitimate penological interest in prohibiting sexually

17   explicit materials is avoiding "strong-arming and coercion among inmates to share the materials

18   and [decreasing] instances of sexual harassment against inmates and staff." Dkt. 29 at 15.

19   Plaintiff argues the book is not sexually explicit, it is an art form not intended for sexual

20   gratification, and that Defendants have no proof of a legitimate penological interest in

21   prohibiting inmates from possessing it. Dkt.19 at 5, 7; Dkt. 63 at 2-3.

22   The book has been filed under seal and the Court has reviewed it. *See* Dkt. 32-1. The

23   Court concurs with Defendants that the book was reasonably deemed to be intended for sexual

24

1    gratification and that it displays, portrays, depicts, or describes the things listed in each of the

2    above subsections of Wash. Admin. Code § 137-48-020(13).

3         While Plaintiff is correct that "Publications initially rejected as sexually explicit material

4    per [Wash. Admin. Code § ] 137-48-020 may be approved by the committee for artistic,

5    health/medical, and educational purposes," that is not the operative regulation in this case.

6         This Court further concurs with Defendants that they need not prove, as Plaintiff

7    suggests, past incidents of sexually explicit material inciting bad behavior within a correctional

8    facility in order to show a rational relationship between a regulation and a legitimate penological

9    interest. Courts have consistently recognized the rational relationship between legitimate

10   penological interests and a restriction on sexually explicit material. *See Thornburgh*, 490 U.S. at

11   415 (finding that a prison regulation prohibiting sexually explicit material was rationally related

12   to the legitimate penological interest of security); *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th

13   Cir. 1999) ("The relationship between the possession of sexually explicit materials and the

14   problems sought to be addressed by the policy—sexual harassment of female officers, jail

15   security and rehabilitation of inmates—is clear."); *Frost v. Symington*, 197 F.3d 348, 357 (9th

16   Cir. 1999) (holding that a ban of sexually explicit materials bore a "common-sense" connection

17   to the objectives of security and rehabilitation); *Powell v. Riveland*, 991 F. Supp. 1249, 1254

18   (W.D. Wash. 1997) (DOC's restriction on sexually explicit material is rationally related to

19   achieving the neutral objectives of preserving institutional security and facilitating inmate

20   rehabilitation).

21        In sum, this Court finds a valid, rational connection between the regulation and the

22   interest it seeks to protect.

23   ///

24

1       b.   <u>Alternative Means of Exercising Right</u>

2       The next question is whether Plaintiff has an alternative means of exercising her First

3  Amendment rights. *Turner*, 482 U.S. at 90.

4       Defendants offer that Plaintiff is free to obtain non-sexually explicit "manga" style art,

5  and that they have not prevented her from receiving publications permitted by DOC's mail

6  regulations and policies and the Wash. Admin. Code. *See* Dkt. 29 at 19.

7       To be sure, Plaintiff presents the Court with more than 100 pages of material she argues

8  is "similar" in nature to the images in "How to Train Your Devil". Dkt. 20 at 191–344[3]. These

9  materials prove that Plaintiff does, indeed, have viable alternatives to this book.

10      In sum, this Court finds that Plaintiff retains alternative means of exercising the right at

11 issue.

12      c.   <u>Impact on Prison</u>

13      The third question asks what impact the requested accommodation will have on inmates,

14 prison staff, and prison resources generally. *Turner*, 482 U.S. at 90. "[C]ourts should be

15 particularly deferential to the informed discretion of corrections officials," especially when the

16 accommodation of a constitutional right will "have a significant 'ripple effect' on fellow inmates

17 or prison staff." *Id*. Decisions regarding prison security are "peculiarly within the province and

18 professional expertise of corrections officials, and, in the absence of substantial evidence in the

19 record to indicate the officials have exaggerated their response to these considerations, courts

20 should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier*, 417 U.S.

21 817, 827 (1974).

22

23 ─────────────────

24     [3] Notably, Dkt. 20 at 135-190 is indecipherable and therefore has not been considered by this Court.

1       Defendants argue that permitting Plaintiff to possess sexually explicit materials such as

2  the book, "How to Train Your Devil" would result in "significantly less liberty and safety for

3  everyone else, guards and other prisoners alike." Dkt. 29 at 20 (quoting *Turner*, 482 U.S. at 92).

4       Plaintiff counters that a book "rated for teens" that can be purchased for thirteen dollars

5  could not have a negative impact on the orderly operation of a prison. *See* Dkt. 19 at 10. Plaintiff

6  also signed a declaration claiming that she, herself, does not derive sexual pleasure from such

7  materials. Dkt. 20 at 60-61. Finally, Plaintiff argues that the DOC policy prohibiting inmates

8  from sharing personal items would prevent other inmates from being affected by her possession

9  of the book. Dkt. 19 at 10; Dkt. 35 at 3.

10       Plaintiff's arguments fail to address Defendants' assertion that permitting her to have the

11  book would create a "ripple effect" within the prison because it contains sexually explicit

12  material and "may be expected to circulate among prisoners, with the concomitant potential for

13  coordinate disruptive conduct." *Thornburgh*, 490 U.S. at 412.

14       In sum, this Court finds the requested accommodation would have a negative impact on

15  the orderly operation of the prison.

16       d.  <u>Alternatives to Regulation</u>

17       The fourth and final question asks whether there are easy alternatives to the regulation

18  that could be implemented at a minimal cost to legitimate penological interests. *Turner*, 482 U.S.

19  at 90-91.

20       Defendant argues that it does not "bear the burden of thinking up and presenting

21  alternatives to the regulation. Rather, it is [Plaintiff's] responsibility to suggest workable

22  alternatives." Dkt. 29 at 21. Plaintiff does not offer any alternatives to the regulation proscribing

23  inmate possession of sexually explicit materials, but instead argues that Defendants should apply

24

1    a different regulation—DOC Policy 450.100(XI)(H)(4)(c)—which states that "Publications

2    initially rejected as sexually explicit material per WAC 137-48-020 may be approved by the

3    committee for artistic, health/medical, and educational purposes." Dkt. 19 at 11. Again, this is

4    not an alternative to the applied regulations, it is an argument that different regulations should be

5    applied.

6          In sum, this Court finds the absence of a workable alternative is evidence that

7    Defendant's restriction of sexually explicit material in incoming publications is reasonable. *See*

8    *Turner*, 482 U.S. at 90-91 (also finding "if a claimant can point to an alternative that fully

9    accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may

10   consider that as evidence that the regulation does not satisfy the reasonable relationship

11   standard").

12         For the above reasons, this Court finds Plaintiff has failed to meet her burden of proving

13   any material questions of fact remain that the regulations at issue have impinged her First

14   Amendment rights. Therefore, this Court recommends summary judgment should be granted to

15   Defendants, and Plaintiff' First Amendment claim should be dismissed with prejudice.

16                    **II.  Fourteenth Amendment Claim**

17         The Fourteenth Amendment right to equal protection survives incarceration. *See e.g.,*

18   *Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841 (9th Cir.1985). Where a plaintiff does

19   not allege a violation of a fundamental right or the existence of a suspect classification, in order

20   to satisfy the equal protection clause prison officials need only show that their policies bear a

21   rational relationship to a legitimate penological interest. *See Hill v. Washington State Dep't of*

22   *Corr*., 628 F. Supp. 2d 1250, 1262 (W.D. Wash. 2009); *see also Turner,* 482 U.S. at 89–90;

23

24

1    *Coakley v. Murphy*, 884 F.2d 1218, 1221–22 (9th Cir.1989); *Daniel v. Rolfs*, 29 F. Supp. 2d

2    1184 (E.D. Wash.1998).

3      Plaintiff does not allege a violation of a fundamental right, as there is no fundamental

4    right to having sexually explicit material in prison. Nor has Plaintiff identified herself as part of a

5    protected or suspect class. *See Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir.1998)(prisoners

6    are not a suspect class). Instead Plaintiff claims she was treated differently than other inmates

7    because "How to Train Your Devil" was intercepted while other inmates have been allowed to

8    possess "similar" sexually explicit material. Dkt. 35 at 9.

9      According to Defendants, in order to show she was treated differently than other

10   (similarly situated) inmates Plaintiff would need to show that a previous inmate was allowed to

11   have a copy of the exact same explicit material—"How to Train Your Devil"—while she was

12   not. Dkt. 29 at 23. In Defendant's view, even assuming for the sake of argument that Plaintiff is

13   correct "similar" content has been approved for entry to DOC facilities in the past, all this shows

14   is that "How to Train Your Devil" is "exceptionally problematic and pose[s] a higher risk to the

15   safety and security of the inmates and DOC personnel." Dkt. 37 at 4.

16     On the readable record[4] before this Court there is no evidence that similarly situated

17   inmates have been treated differently than Plaintiff. But even if there was, that still would not be

18   enough to show a denial of equal protection without proof that officials intentionally acted in a

19   discriminatory manner toward Plaintiff. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir.

20   1997), abrogated on other grounds as stated in *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir.

21   2008). Conclusory statements alleging discrimination, unsupported by evidence, are insufficient

22

23   _____

24   [4] See *supra* note 2.

REPORT AND RECOMMENDATION ON CROSS
MOTIONS FOR SUMMARY JUDGMENT - 12

1  to survive summary judgment. *Magana v. Com. of the N. Marina Islands*, 107 F.3d 1436 (9th
2  Cir. 1997).

3         Consequently, this Court finds no material question of fact remains to be answered before
4  concluding that Plaintiff cannot prove a violation of her Fourteenth Amendment rights. Thus,
5  this Court recommends summary judgment be granted to Defendants, and Plaintiff' Fourteenth
6  Amendment claim be dismissed with prejudice.

7                                    CONCLUSION

8         This Court recommends that Defendants' motion for summary judgment should be
9  GRANTED, and Plaintiff's motion for summary judgment should be DENIED with prejudice.

10        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have
11  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.
12  6. Failure to file objections will result in a waiver of those objections for purposes of de novo
13  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit
14  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on July
15  9, 2021, as noted in the caption.

16        Dated this 22nd day of June, 2021.

17

18

19                                    David W. Christel
                                      United States Magistrate Judge
20

21

22

23

24